UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Magistrate No.
03-M-1150-JGD

UNITED STATES OF AMERICA

v.

ANIBAL TORRES

# MEMORANDUM AND ORDER ON
# GOVERNMENT'S MOTION FOR DETENTION

November 25, 2003

DEIN, M.J.

## I. GOVERNMENT'S MOTION FOR DETENTION

The defendant, Anibal Torres, is charged in a criminal complaint with conspiracy to distribute and to possess with intent to distribute more than 100 kilograms of marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 846. An initial appearance was held on October 27, 2003, at which time the government moved for detention on the grounds that the defendant was a danger to the community and posed a serious risk of flight, in accordance with 18 U.S.C. §§ 3142(f)(1)(C) and (f)(2)(A). A probable cause and detention hearing was held on October 30, 2003, at which time the defendant was represented by counsel. At the defendant's request, the hearing was continued to November 6, 2003, and then again to November 14, 2003, at the defendant's request. On November 14, 2003, defendant's counsel withdrew due to a conflict of interest, and the matter was continued to November 21, 2003, at which time the defendant was represented

by court-appointed counsel. At the conclusion of the hearing, the court requested that Pre-trial Services interview several potential third-party custodians, and the court received the reports of these interviews on November 25, 2003. For the reasons detailed herein, this court orders that the defendant be detained prior to trial.

## II.  THE BAIL REFORM ACT

A.  Under the provisions of 18 U.S.C. § 3142 ("The Bail Reform Act"), the judicial officer shall order that, pending trial, the defendant either be (1) released on his or her own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation or exclusion; or (4) detained. See 18 U.S.C. § 3142(a).

Under § 3142(e), a defendant may be ordered detained pending trial if the judicial officer finds by clear and convincing evidence after a detention hearing "that no condition or combination of conditions (set forth under § 3142(b) or (c)) will reasonably assure the safety of any other person or the community . . . ," or if the judicial officer finds by a preponderance of the evidence after a detention hearing "that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . ."  See United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991).

B.  The government is entitled to move for detention on grounds of danger to the community in a case that –

(1)  involves a crime of violence within the meaning of 18 U.S.C. § 3156(a)(4);

(2)  involves an offense punishable by death or life imprisonment;

  (3) involves an offense proscribed by the Controlled Substances Act or the Controlled Substances Import and Export Act for which the punishment authorized is imprisonment for ten years[1] or more; <u>or</u>

  (4) involves any felony alleged to have been committed after the defendant has been convicted of two or more crimes of violence, or of a crime, the punishment for which is death or life imprisonment, or a ten year [or more] offense under the Controlled Substances Act or the Controlled Substances Import and Export Act.

Additionally, the government or the court <u>sua sponte</u> may move for, or set, a detention hearing where there is a serious risk that the defendant will flee, or where there is a serious risk of obstruction of justice or threats to potential witnesses.  <u>See</u> 18 U.S.C. § 3142(f).

  C. In determining whether there are conditions of release which will reasonably assure the appearance of the person as required and the safety of any other person and the community, or whether pretrial detention is warranted, the judicial officer must take into account and weigh information concerning --

  (a) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

  (b) the weight of the evidence against the accused;

  (c) the history and characteristics of the person, including --

---

[1] The maximum penalty is that provided by the statute defining and/or providing the punishment for the substantive offense – not the sentence, or even the maximum sentence, which might otherwise be imposed under the federal Sentencing Guidelines.  <u>See</u> <u>United States v. Moss</u>, 887 F.2d 33, 336-37 (1st Cir. 1989).

        (i)   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

        (ii)   whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

    (d)   the nature and seriousness of the danger to any other person or the community that would be posed by the person's release.

See 18 U.S.C. § 3142(g).

    D.   Additionally, in making the determination, the judicial officer must consider two rebuttable presumptions, to wit:

First, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of any other person or the community if the judicial officer finds (1) that the defendant has been convicted of a federal crime of violence within the meaning of § 3156(a)(4) [or a state crime of violence within the meaning of § 3156(a)(4) if the offense would have been a federal offense if a circumstance giving rise to federal jurisdiction had existed], a federal offense for which the maximum sentence is life imprisonment or death, a federal offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act -- e.g., possession of cocaine, heroin, or more than 1000 pounds of marijuana, with intent to distribute, the Controlled Substances Import and Export Act, or any felony after the person has been convicted of two or more prior offenses as described immediately above, or two or more state or local offenses that would have been offenses described immediately

-4-

above if circumstances giving rise to federal jurisdiction had existed; (2) that prior offense was committed while the person was on release pending trial; and (3) not more than five years has elapsed since the date of conviction for that prior offense, or his or her release for that prior offense, whichever is later.  See 18 U.S.C. § 3142(e).

Second, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act or an offense under the provisions of 18 U.S.C. § 924(c) – i.e., use of or carrying a firearm during the commission of a federal offense which is a felony.  See 18 U.S.C. § 3142(e).

Insofar as the latter "presumption" is applicable in assessing "risk of flight," the burden remains with the government to establish "that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . ."  In striking the proper balance, this court must bear in mind Congress' findings that major drug offenders, as a class, pose a special danger of flight.  The burden then rests on the defendant to come forward with "some evidence" indicating that these general findings are not applicable to him for whatever reason advanced.  United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991).  This "only imposes a burden of production on a defendant. The burden of persuasion remains with the government." United States v. Palmer-Contreras, 835 F.2d 15, 17-18 (1st Cir. 1987) (per curiam); see also United States v.

Perez-Franco, 839 F.2d 867, 869-70 (1st Cir. 1988). Even when a defendant produces "some evidence" in rebuttal, however, the presumption does not disappear. Rather, it retains some evidentiary weight, the amount of which will depend on how closely the defendant's case "resembles the congressional paradigm" and other relevant factors. Palmer-Contreras, 835 F.2d at 17-18; Dillon, 938 F.2d at 1416. See United States v. Jessup, 757 F.2d 378, 387 (1st Cir. 1985).

### III. DISCUSSION OF WHETHER DETENTION IS WARRANTED

"Detention determinations must be made individually and, in the final analysis, must be based on the evidence which is before the court regarding the particular defendant." U.S. v. Tortora, 922 F.2d 880, 888 (1st Cir. 1990), and cases cited. Based on the record before me, I find that there are no conditions which may be imposed which will reasonably insure the safety of the community.

Following the conclusion of the evidence this court found that there is probable cause to establish that the crime alleged in the complaint was committed and that the defendant committed the crime charged. Since the defendant is charged with a violation of the Controlled Substances Act (21 U.S.C. § 801 et seq.), which carries a maximum sentence of ten years or more of imprisonment, the rebuttable presumption that no condition or combination of conditions of release will reasonably assure the appearance of the defendant as required and the safety of the community applies. The defendant has proffered his mother and accountant/friend as potential third party custodians. Assuming, arguendo, that such "evidence" meets the defendant's burden of production, even without the presumption, I find that the government has proven by clear and convincing evidence

that there are no conditions or combination of conditions which will reasonably assure the safety of other persons.

### A. The Offense Charged And Weight Of The Evidence

The defendant is charged with a serious drug offense, and faces a maximum term of imprisonment of 40 years with a mandatory minimum of 5 years if convicted of the crime charged. The case against him is strong. Briefly, on October 22, 2003, the police in Phelps County, Missouri, stopped a 40-foot recreational vehicle ("RV") for traffic violations. The vehicle was being driven by Christopher Sugar and carried a passenger, Sean Stark, both of whom are co-defendants in the instant case. The RV was registered to a Robert L. Ireland of Tucson, Arizona, the owner of Link Trailer Repair.

After a drug detection dog "alerted" to the existence of narcotics within the RV, the vehicle was searched and 27 bundles (holding 376 pounds) of marijuana wrapped in cellophane shrink-wrap were found in a locked closet. Sugar and Stark were arrested on Missouri state narcotics charges and agreed to cooperate with law enforcement and make a controlled delivery of the marijuana to its intended recipient in Massachusetts. They traveled to Massachusetts on October 23 and 24, 2003, accompanied by DEA Task Force Agents. Along the way, Stark made a number of calls to Torres' co-defendant, Fabian Ruiz, who Sugar and Stark identified as the owner of the marijuana. Ruiz lived in Tucson. According to Stark, he and Sugar were being paid approximately $20,000 to deliver the marijuana to Ruiz's customer, who Stark knew as "Pace." The defendant Torres was subsequently identified as "Pace" and Torres admitted using the name Pace.

According to Stark, he had made 5-6 deliveries to Pace (Torres) in the past year to year and a half.

On October 24, 2003, the RV arrived in Massachusetts. Stark, with the Agents' knowledge, arranged with Ruiz for the delivery of the marijuana. There was surveillance of the delivery. Basically, Ruiz arrived at the designated location in a white Lexus driven by Torres. The car is registered to Torres' mother, although Torres admitted to paying for the car and for insurance. Co-defendant Trevor Teague was in the car as well. Attempts by Ruiz to start the RV were unsuccessful. Thereafter, Ruiz, Torres and Teague began unloading the marijuana into the Lexus. They were then arrested.

Torres told the agents that he picked up Ruiz and Teague the night before in Lowell, and that they spent the night at his house. Torres was supposed to make approximately $5,000 for his role in transporting the marijuana within Massachusetts. Torres told Agents that he had participated in approximately 6 other trips for Ruiz in the past.

### B. History And Characteristics Of The Defendant

The defendant, age 34, was born on August 16, 1969 in the Bronx, New York. He completed the eighth grade at Methuen East Middle School. He has lived in the Lawrence/Methuen, Massachusetts area since he was four years old.

The defendant has a 16 year old daughter, Pauline, who was recently removed from foster care to live with the defendant. In addition, he has two children, ages 12 and 8, with his former fiancé of 13 years, Yolanda Reyes. Ms. Reyes is taking care of Pauline at this time along with her own two children. The defendant and Ms. Reyes have had a volatile relationship in the past. In 1994, Ms. Reyes took out a restraining order against Torres,

and he was found guilty of threatening and assault and battery in Lawrence District Court that year, apparently in connection with an incident with Ms. Reyes.  In January 2003, the defendant was charged with intimidation in the Lawrence District Court.  Again, while the record is unclear at this point, this appears to relate to another incident with Ms. Reyes.  The charges were dismissed in September 2003.  Ms. Reyes did appear in court in support of Torres.

The defendant has no contact with his father.  His mother, Eloida Guerrero, nee Torres, lives in Lawrence with her mother (the defendant's grandmother).  Ms. Guerrero appeared in court and has offered to serve as a third party custodian for her son.  The defendant has two sisters who also live in Massachusetts.

The defendant has owned and operated Hit Records in Lowell, Massachusetts for the past year or so, and earns $5,000 per month.  He has one other employee.  Prior to this he was self employed for several years, selling music on the side.  He also works as a promoter for several neighborhood musicians.  The defendant has held various other jobs over the years as well.

The defendant has a lengthy criminal history which, although not among the most serious records this court has seen, shows a continued inability on the part of the defendant to conform his behavior to the requirements of the law.  The defendant has a juvenile record spanning two years.  As an adult, in 1987, he was charged with leaving the scene of an accident involving property damage, and was found guilty and fined.  In 1988, the defendant was charged with and found guilty of other motor vehicle violations, again including a charge of leaving the scene of an accident involving property damage.  In 1990,

he was convicted of operating after a suspended license. In 1990, the defendant was also charged with possession with intent to distribute a Class D controlled substance. The charges were dismissed at the request of the government in 1992, after a number of defaults.

In November 1990, the defendant was charged with operating with a revoked license for which he was found guilty and committed for 10 days. In December 1990, he was again charged with operating with a revoked license and with assault and battery on a police officer. The defendant was found guilty and was given a 90 day suspended sentence. In 1991, the defendant was charged with and found guilty of possession of a Class D controlled substance, for which he was fined. In 1994, after again being convicted of operating with a suspended license, the defendant was given a 6 month suspended sentence.

In 1994, the defendant was found guilty of threatening and assault and battery, apparently in connection with an altercation with Ms. Reyes, and put on probation. In 1996, he was again charged with operating with a suspended license and possession of a Class D controlled substance, for which he was given a 1 year suspended sentence. As noted above, in 2003, the defendant was charged with intimidation, a charge that was later dismissed.

In connection with the instant case, the defendant faces a mandatory minimum period of incarceration of 5 years.

The defendant has proffered his mother as a third party custodian. While the court appreciates her involvement with her son and her interest in helping him, I do not find that

this would be a suitable arrangement. Ms. Guerrero has been employed full time by the City of Lawrence for the past three years, and she earns $25,000. Since Ms. Guerrera works full time, she would not be home during the day. The Lexus driven and paid for by her son was registered in her name.[2] Ms. Guerrera also has a criminal record spanning the period 1981 through 1988 which includes assault and battery on a police officer, shoplifting, and knowingly receiving stolen property. She has never been incarcerated. Pre-trial Services does not find her to be an appropriate third party custodian.

The defendant has also proffered his accountant and friend, Abimael Vega, as a third party custody. Again, the court appreciates Mr. Vega's involvement. Nevertheless, Pre-trial Services does not find Mr. Vega to be an appropriate third-party custodian, and this court agrees. Mr. Vega served in the U.S. Marines from 1982 to 1985, and received an "Other than Honorable" discharge. He has lived in Lowell since 1986, and owns various businesses and property. He has offered to post the equity in his home as collateral for a bond for the defendant, but the home is owned by his wife.

Despite his position as an accountant, Mr. Vega has been convicted of larceny more (1991), and 30 counts of larceny more (1993) for which he was given probation. He has also been convicted of operating a motor vehicle with a suspended license.

### C. Danger To The Community

The government has met its burden of proof, by clear and convincing evidence, that there are no conditions or combination of conditions of release which will reasonably

---

[2] While there is no direct evidence on this point, it appears likely that Ms. Guerrero was the registered owner of the vehicle because of her son's prior record which is replete with motor vehicle offenses.

assure the safety of other persons and the community.  The evidence that the defendant was engaged in a significant drug venture is strong.  He was arrested while off-loading the drugs into his car.  The evidence is that he has been involved in receiving comparable shipments of drugs on about six other occasions in just the last year or so.  Torres appears to be a trusted cohort of the "mastermind" of the operation, Ruiz, and to play a significant role in the large-scale drug operation.

This court did struggle with whether the risk of danger to the community could be significantly reduced to an acceptable level if the defendant was placed on an electronic monitor, since he was not the ringleader.  However, after careful review of the record, it appears that the defendant Torres played a significant enough role in the drug venture that he could continue the business.  The defendant's record does not support the conclusion that he is able to conform his behavior to follow the conditions of release.  His criminal history shows that the same crimes are committed again and again despite serious warnings from the court.  The defendant's mother, while well-intentioned, has not exerted the control over Torres to give this court assurance that she will be able to insure his compliance with conditions of release.  Not only has his drug trafficking taken place while he maintains close contacts with her, but she has let herself be used to register a luxury car in her name which is being used in a drug enterprise.

Similarly, this court recognizes and appreciates that Mr. Vega is willing to step-in to help supervise Torres.  However, Mr. Vega has had his own problems with the law, and his ability to practice as an accountant with his criminal record is unclear to this court.

Moreover, the record does not support a finding of a close enough relationship between the two men so as to give this court assurance that he could influence Torres' behavior.

This court also considered the argument that the defendant should be allowed to continue with his business, albeit from his mother's home. However, the record store appears to be a fairly recent undertaking and the court has only scant information about its viability. From the evidence provided to the court, it appears that a sizeable portion of the defendant's income is from drug trafficking. The defendant does not have a long term or stable employment history. The rebuttable presumption which applies in the case of drug charges was premised, in part, on Congress' conclusion "that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of any other person or the community.'" S. Rep. No. 225, 98th Cong., 1st Sess. 13 (1983). Recognizing that the burden of persuasion remains with the government at all times, I find that the presumption of dangerousness has not been rebutted.

In light of this finding, the court does not reach the issue whether detention is appropriate on the grounds that the defendant poses a serious risk of flight.

### IV.  **ORDER OF DETENTION**

IT IS ACCORDINGLY ORDERED that the defendant remain DETAINED pending trial, and it is further Ordered --

(1)    That the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

   (2) That the defendant be afforded a reasonable opportunity for private consultation with counsel; and

   (3) On order of a court of the United States or on request by an attorney for the government, the person in charge of the corrections facility in which the defendant is detained and confined deliver the defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

           / s / Judith Gail Dein
           Judith Gail Dein
           United States Magistrate Judge